RICHARD CARRIQUE & another *vs.* JOHN SIDEBOTTOM & Trustees.

Where one who is summoned as trustee, in the process of foreign attachment, has answered an interrogatory fully and intelligibly, the court will not require him to answer further, on his being asked to answer the interrogatory distinctly.

And where a person, so summoned, discovers that he has, in his answer, stated a fact incorrectly, or in terms which would admit of an inference or implication not intended by him, the court may allow him to make an additional answer, without further interrogatory, correcting or qualifying such supposed erroneous answer.

S., a laborer employed by a manufacturing corporation, drew this order on the clerk of the corporation, in March 1838 : " Please pay L. & A. my wages from month to month, as they become due, and what may now be due me from the corporation : " The clerk accepted the order, for the corporation, and all the wages of S. were paid to L. & A. until October 1839 : In November 1839, the corporation were summoned as trustees of S., and L. & A. had knowledge of the process, but gave the corporation no notice that they had made any advances on the faith of the order, or that they claimed the money by virtue of it. *Held,* that this order did not, *primâ facie,* constitute an assignment to L. & A. but only an authority to pay them ; and that the corporation were chargeable as trustees of S.

THE Bristol Print Works, a manufacturing company incorporated by *St.* 1833, *c.* 45, were summoned as trustees of the principal defendant. The writ was served on them, November 9th 1839. On the 21st of December 1839, Charles Porter, clerk of said corporation, filed the following answer on oath : " The said Sidebottom had been in the employment of the said Bristol Print Works from the 1st of October 1839, to the 9th of November 1839, and his wages at that time amounted to $ 47·62. Previous thereto, viz. March 27th 1838, the said

Carrique & another *v.* Sidebottom & Trustees.

Sidebottom drew an order upon the said Porter, clerk of said Print Works, in these words : 'Please to pay Leonard & Atwood my wages from month to month, as they become due, and what may now be due me from the Bristol Print Works, and oblige yours, &c. John Sidebottom.' This order was accepted by said Porter, clerk of said Print Works, and for them , and said Leonard & Atwood have had all that said Sidebottom had earned in the employment of said Print Works, up to October 1st 1839."

In answer to the second interrogatory, put by the plaintiffs, viz. " how much money of said Sidebottom was in your hands, when said writ was served, which had not been paid over to said Leonard & Atwood," the said Porter replied, that " there was due to Sidebottom $ 47·62, at the time of the service of said writ upon said Print Works."

On the 24th of December 1839, said Porter subscribed and made oath to the following explanation of his answer to the above interrogatory :  " In saying there was due to Sidebottom $ 47·62, at the time of the service of the plaintiffs' writ upon said corporation, he intended and meant that his, the said Sidebottom's wages, embraced by the order aforesaid, amounted to that sum."   The plaintiffs objected, that said further statement ought not to be permitted to be made, as the examination of the trustees had been closed on a former day.  But the court in which the suit was pending received the statement, and the plaintiffs thereupon proposed further interrogatories to said Porter, as follows :

" Do you or do you not mean, that at the time of the service of the writ on you, the said sum of $ 47·62 was due from the Print Works to said Sidebottom for wages, or not ? "   To this the answer was — " I mean, as I have before stated, that at the time of the service of the writ on said corporation, I had, in their behalf, accepted an order drawn by said Sidebottom in favor of said Leonard & Atwood, to pay them the amount of his earnings while in the service of said corporation."

" Please to state distinctly how much money was in your hands at the time of the service of the writ on you, which has

been earned by said Sidebottom." Answer. "Please recur
to my disclosure before any interrogatory was propounded, and
my answer to the second interrogatory, and the explanation
foregoing."

The plaintiffs moved the court below to direct said Porter
to answer the last interrogatory distinctly, and objected to the
above answer as indistinct and improper ; but the court refused
to direct him to answer more distinctly.    Thereupon, the plain-
tiffs proposed further interrogatories, from the answers to which
it appeared, that said Leonard & Atwood knew of the pendency
of the trustee process ; but it did not appear that they had given
said Porter any notice that they had made advances to Side
bottom, in consequence of the acceptance of said order, or
that they claimed that further payment should be made to them

*Pratt*, for the plaintiffs.

*A. Bassett & Holmes*, for the trustees.

SHAW, C. J.    There was an objection on the part of the
plaintiffs, that the trustees had failed to answer a pertinent ques-
tion put by the plaintiffs, and that it was irregular to permit
them to make an additional answer, after their answers to the
interrogatories of the plaintiffs had been filed.

In regard to the first, it appears to us that the trustees did an-
swer fully, and that the question, which they declined to answer,
and which was, to say the least, not very courteous in manner,
merely demanded of the trustees to state distinctly, what they
had fully stated before.

In regard to the other point of practice, we think that it was
not only competent, but entirely proper for the court, if the
trustees discovered that they had stated a fact in the answer in-
correctly, or in terms which would admit of an inference or im-
plication not intended by them, to allow them to make an addi-
tional answer, without further interrogatory, correcting or quali-
fying the supposed erroneous answer.    *Hovey* v. *Crane*, 12
Pick. 167.

But the court are of opinion, that the order drawn by Side-
bottom, on Porter, the clerk of the company with whom he
was at work, requesting him to pay his wages to Leonard & At

wood from month to month, as they should become due, made a year and a half previous to the service of the trustee pro cess, did not *primâ facie* constitute an assignment to them. We do not put it upon the ground, that the acceptance made by Porter would not be deemed the act of the company, if, in other respects, it had the qualities of an assignment. But the circumstance, that it was drawn on the clerk and not on the company, concurs with the other circumstances to show that it was rather an authority to pay, than an assignment.

It was not a draft for the payment of a sum of money certain, or to be made certain afterwards. It was not drawn upon any fund existing, or to be created under any contract or obligation. It was made long previously, with no consideration expressed or shown *aliunde.* It does not appear by the trustees' answers, that Leonard & Atwood, although they knew of the service of the trustee process, gave any notice that they had made any advances on the faith of the order, or that they claimed the money by virtue of it. In all these respects, the case differs wholly from that of *Bourne v. Cabot,* (*post.* 305,) decided at the present term.

The case of *Willard* v. *Butler,* 14 Pick. 550, cited for the trustees, has no bearing on this case. There the trustee was discharged, because there was no original contract on the part of the employer to pay the workman in money. On the contrary, there was an express agreement to pay in orders ; so that no promise to pay money was implied by law.

*The corporation charged as trustees.*